## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| BOBBI POLANCO, on behalf of herself and all others similarly situated, et al., | Civ. No. 13-1417 (NLH/KMW) |
| Plaintiffs, | **OPINION** |
| v. | |
| OMNICELL, INC., et al., | |
| Defendants. | |

---

## APPEARANCES:

Mark L. Rhoades, Esquire
Haviland Hughes
111 S. Independence Mall East
Suite 1000
The Bourse
Philadelphia, Pennsylvania 19106

    *Attorney for Plaintiff Bobbi Polanco*

Landon Young Jones, Esquire
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 South 16th Street
Suite 3200
Philadelphia, Pennsylvania 19102

    *Attorney for Defendant Omnicell, Inc.*

Theodore Joseph Kobus, III, Esquire
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

    *Attorney for Defendant Sentara Healthcare*

Robert D. Balin, Esquire
Davis Wright Tremaine LLP
1633 Broadway
New York, New York 10019

>    *Attorney for Defendants South Jersey Health System, Inc.
>    and Inspira Health Network, Inc.*

Stephen F. Payerle, Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

>    *Attorneys for Defendant Board of Regents of the University
>    of Michigan*


**HILLMAN, District Judge**

This matter comes before the Court by way of several
motions [Doc. Nos. 28, 29, 30, 31] seeking to dismiss
Plaintiff's First Amended Class Action Complaint (the "Amended
Complaint") [Doc. No. 12] pursuant to Federal Rules of Civil
Procedure 12(b)(1) for lack of subject matter jurisdiction and
12(b)(6) for failure to state a claim upon which relief can be
granted made by Defendants Omnicell, Inc., Sentara Healthcare,
South Jersey Health System, Inc., Inspira Health Network, Inc.,
and the Board of Regents of the University of Michigan.

Plaintiff opposes all of the pending motions to dismiss,
and filed an omnibus response in opposition.  The Court has
considered the parties' submissions, and decides this matter

pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below, Defendants' motions will be granted.

I.   **JURISDICTION**

The Court exercises jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2)(A),[1] the Class Action Fairness Act ("CAFA") because the aggregate amount in controversy exceeds $5 million and minimal diversity exists between Plaintiff, a citizen of New Jersey, and Defendants, citizens of Delaware, California, New Jersey, Virginia, and Michigan.

II.  **BACKGROUND**

Plaintiff Bobbi Polanco brings this putative class action on behalf of herself and all others similarly situated asserting claims for: (1) breaches of state security notification laws; (2) violations of consumer fraud laws in New Jersey, Virginia, and Michigan; (3) fraud; (4) negligence; and (5) conspiracy.[2]

---

[1]   Section 1332(d)(2)(A) provides in pertinent part that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

[2]   Plaintiff's count for conspiracy is misnumbered in the Amended Complaint as Count IV, rather than Count V.  The Court will refer to this this conspiracy count as Count V for the sake of clarity.

3

(Am. Compl. ¶¶ 78-116.)  Plaintiff's Amended Complaint names
several Defendants.  Defendant Omnicell, Inc. ("Omnicell") is a
corporation that "sells automatic and analytics solutions
designed to enable healthcare facilities to acquire, manage,
dispense and administer medications and medical-surgical
supplies." (Am. Compl. ¶ 15.)  According to the Amended
Complaint, Omnicell's "systems provide medication control and
dispensing starting from the point of entry into the hospital
and other health care providers, through the central pharmacy,
to the nursing station and to the patient's bedside." (Id.)
Plaintiff asserts that Omnicell's medication-use products are in
more than 2,500 healthcare facilities across the country.  (Id.
¶ 16.)

The remaining Defendants are hospitals or healthcare
providers for which Omnicell provides automated medication
dispensing services.  By virtue of the nature of the services it
provides to hospitals and healthcare providers, Omnicell is
entrusted with patient information.  The specific hospitals or
healthcare providers named as Defendants in this suit are as
follows.  Defendant Sentara Healthcare ("Sentara") is a Virginia
corporation that owns and operates approximately twelve (12)
hospitals throughout the state of Virginia.  (Id. ¶¶ 24-25.)
Defendant the Board of Regents of the University of Michigan

("the Board of Regents") is "the body corporate of the University of Michigan" which supervises, controls, and authorizes the actions of the departments of the University including the Department of Medicine. (Id. ¶¶ 26-27.)  The University of Michigan owns and operates a medical center known as the University of Michigan Health System[3] which provides medical care for "over 1.8 million outpatient and emergency visits, 44,000 hospital stays, 46,000 surgeries and 4,000 births" in a typical year. (Id. ¶¶ 28-29.)

Defendant South Jersey Health System, Inc. ("SJHS") is a non-profit corporation, which, prior to November 1, 2012, owned and operated two hospitals – SJHS's Regional Medical Center in

---

[3]   To the extent Plaintiff's Amended Complaint makes allegations against the University of Michigan Health System ("UMHS") or alleges conduct on the part of UMHS or its hospitals, the Court recognizes that UMHS and its hospitals are considered to be "adjunct of the medical department of the University, which is a state educational instrumentality maintained by the public at public expense, controlled and operated by the Board of Regents[.]" Robinson v. Washtenaw Circuit Judge, 199 N.W. 618, 620 (Mich. 1924).  Accordingly, "any suit intended to be brought against any part of the University of Michigan hospitals or health system must be brought against the Board of Regents of the University of Michigan." Ali v. University of Michigan Health System-Risk Management, No. 11–13913, 2012 WL 3112419, at *3 (E.D. Mich. May 4, 2012), aff'd, 523 F. App'x 319 (6th Cir. 2013).
Therefore any and all references to the University of Michigan or UMHS in this opinion shall be construed to refer instead to the Board of Regents.

Vineland, New Jersey, and SJHS's Elmer Hospital in Elmer, New

Jersey. (Id. ¶¶ 17, 19-20.)  On November 1, 2012, SJHS merged

with Underwood-Memorial Health Systems, Inc., resulting in the

formation of a new company now known as Inspira Health Network,

Inc. ("Inspira").  (Id. ¶¶ 18-20.)  After the merger, SJHS's

Regional Medical Center in Vineland was renamed Inspira Medical

Center Vineland, and SJHS's Elmer Hospital was renamed Inspira

Medical Center Elmer.[4]  (Id. ¶ 21.)

According to Plaintiff, her claims and the claims of the

putative Class arise out of the November 14, 2012 theft of a

laptop computer, owned by Omnicell, which was stolen out of the

locked vehicle of an Omnicell employee.  (Am. Compl ¶¶ 2, 42-

43.)  Plaintiff alleges that the stolen laptop computer

contained the unencrypted Personal Confidential Information

("PCI") of Plaintiff, and thousands of other individuals, all of

whom provided their information to Defendants Sentara, Inspira,

and the University of Michigan during the course of seeking

healthcare treatment for themselves and their loved ones at

---

[4]   In light of the status of these entities after the merger,
the Court will refer to these Defendants collectively as
Inspira.  When referring to facts that predate the merger, the
Court will refer to SJHS, but that reference will only be for
purposes of clarity, as SHJS is no longer a separate entity from
Inspira.

these medical institutions.[5]  (Id. ¶¶ 2, 43, 45.)  Plaintiff apparently learned of the data breach associated with the laptop in question by receipt of a letter from Omnicell dated December 31, 2012, attached as Exhibit A to the Amended Complaint. (Ex. A to Pl.'s Am. Compl. [Doc. No. 12-1], 1-2.)  Plaintiff alleges that tens of thousands of patients were affected by Omnicell's data breach including 8,500 patients of SHJS, 4,000 patients of the University of Michigan Health System, and 56,000 patients from Sentara.  (Id. ¶ 48.)

Plaintiff asserts that the unencrypted PCI contained on the laptop in question included a patient's:  name, date of birth, gender, allergies, patient number, medical record number, hospital room number, treatment site, physician's name, admission and/or discharge dates, and patient type (i.e., inpatient, emergency room, outpatient).  (Id. ¶ 45.)  In addition to this general information, Plaintiff asserts that the unencrypted PCI also included the names of the medications used to treat the patient, as well as the dosage amount, the rate, the route (i.e., oral, infusion, etc.), the frequency, administration instructions, and start/stop times for the

---

[5]   Plaintiff's proposed class includes "all individuals who had their PCI stolen from the electronic device issued to the Omnicell employee on the evening of November 14, 2012."  (Am. Compl. ¶ 66.)

medication.[6]  (Id.)

     Plaintiff claims that her PCI came to be stored on the Omnicell laptop in question in connection with medical treatment Plaintiff sought for her minor daughter at two SJHS hospitals

---

[6]   Plaintiff represents that it is "not known exactly all of the PCI that was included on the laptop" and alleges that the following categories of PCI were also provided to Defendants by Plaintiff and putative class members:

    a.   the names of patients, their relatives, and the parties responsible for payment of medical expenses;
    b.   their addresses (including email addresses);
    c.   their phone numbers (including unlisted phone numbers);
    d.   their Social Security numbers;
    e.   their financial account information (including banking, credit cards, and other financial account numbers);
    f.   their employer and income information; and
    g.   health information about their medical care and treatment at medical facilities covered by Health Insurance Portability and Accountability Act of 1996.

(Am. Compl. ¶ 3.)

To the extent Plaintiff seeks to allege that addresses, telephone numbers, Social Security numbers, financial account information, and employer and income information may have been contained on the laptop in question and thus compromised in some yet unknown manner, the December 31, 2012 letter from Omnicell attached to the Amended Complaint directly contradicts such allegations.  (See Ex. A to Pl.'s Am. Compl. [Doc. No. 12-1], 2) ("Also, the patient's financial information, bank account information, Social Security number, and insurance information were not on the device.")  Accordingly, the Court need not accept such purported allegations as true.  See, e.g., Kates v. Keen, 487 F. App'x 704, 706 (3d Cir. 2012) (upholding dismissal for failure to state a claim where documents attached to complaint contradicted plaintiff's claims); Jeffrey Rapaport M.D., P.A., v. Robin S. Weingast & Assocs., Inc., 859 F.Supp.2d 706, 714 (D.N.J.,2012) ("'When allegations contained in a complaint are contradicted by the document it cites, the document controls.'")

now owned and operated by Inspira.  Specifically, Plaintiff alleges that on at least five occasions since 2011, she brought her daughter to the emergency room of either the SJHS Regional Medical Center or SJHS's Elmer Hospital for treatment of sudden on-set symptoms for upper respiratory infections, bronchitis, fevers, and throat-swelling episodes.  (Id. ¶¶ 35-37.)  As part of her treatment, Plaintiff's daughter received antibiotics which were administered intravenously.  (Id. ¶ 39.)  During her initial visit to a SJHS hospital, Plaintiff provided SJHS with her Social Security number, her insurance information, dates of birth for her and her daughter, and a summary of the medical condition giving rise to that visit.  (Id. ¶ 40.)  On each subsequent visit, Plaintiff was asked to confirm the accuracy of the information she had previously provided and to provide a summary of the reason for her daughter's current visit.  (Id.)

The Amended Complaint does not explicitly allege that one of Omnicell's automation and analytics systems or products was utilized to administer antibiotics to Plaintiff's daughter during her treatments at these two SJHS hospitals.  However, the December 31, 2012 letter from Omnicell to Plaintiff makes clear that Omnicell "provides automated medication dispensing services on behalf of various healthcare providers, including" SHJS (now Inspira) and that in doing so, "Omnicell is entrusted with

9

patient information."   (Ex. A to Pl.'s Am. Compl. [Doc. No. 12-1], 1-2.)

By filing this action, Plaintiff now "seeks to remedy the harmful effects of the breach of ... privacy interests of Plaintiff and the Class, the failure to timely and reasonably notify [Plaintiff and the Class] of such breach ..., and the misleading and deceptive notification sent on December 31, 2012." (Id. ¶ 6.)

## III. <u>DISCUSSION</u>

In general, Defendants now move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.   Standard for Dismissal Under Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  "'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'"  <u>Symczyk v. Genesis HealthCare Corp.</u>, 656 F.3d 189, 191 n.4 (3d Cir. 2011) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A motion to dismiss for lack of subject matter jurisdiction

may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." D.G. v. Somerset Hills School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008).  On a facial attack, "the court must consider the allegations of the complaint as true." Mortensen, 549 F.2d at 891.  "A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint." D.G., 559 F. Supp. 2d at 491.

Upon a factual attack, by contrast, the court need not presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891.  Moreover, when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1), the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891).  "The defendant may

11

factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed." D.G., 559 F. Supp. 2d at 491.

In the present motions, several Defendants argue that Plaintiff lacks standing to bring her claims and thus the Court lacks subject matter jurisdiction over this case.  Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of standing, since "standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997).  A plaintiff must establish his or her standing to bring a case in order for the court to possess jurisdiction over his or her claim.  Id.

To establish standing, Plaintiff must demonstrate that (1) she "suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural, or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of - the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of

12

the independent action of some third party not before the
court"; and (3) "that the injury will be redressed by a
favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S.
555, 560-561 (1992); see also Anjelino v. N.Y. Times Co., 200
F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the
pleading stage by setting forth specific facts that indicate
that the party has been injured in fact or that injury is
imminent, that the challenged action is causally connected to
the actual or imminent injury, and that the injury may be
redressed by the cause of action.")

B.    **Standard for Dismissal under Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) provides for
dismissal of an action when the Court does not have personal
jurisdiction over a defendant.  "Once challenged, the plaintiff
bears the burden of establishing personal jurisdiction."
O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d
Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150
(3d Cir. 2001)).  In deciding a motion to dismiss for lack of
personal jurisdiction, the Court must "accept all of the
plaintiff's allegations as true and construe disputed facts in
favor of the plaintiff."  Carteret Sav. Bank v. Shushan, 954
F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992)
(citations omitted).

**C.   Standard for Dismissal under Rule 12(b)(6)**

In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.   Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the

14

facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" <u>Fowler</u>, 578 F.3d at 211 (citing <u>Iqbal</u>, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." <u>Fowler</u>, 578 F.3d at 211; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing <u>Twombly</u>, 550 U.S. at 556). "The defendant bears the burden of showing that no claim has been presented." <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005).

**IV.** <u>**ANALYSIS**</u>

**A.    The Board of Regents' Motion to Dismiss**

The Board of Regents of the University of Michigan makes three arguments in support of its motion to dismiss Plaintiff's Amended Complaint. As a threshold issue, the Board of Regents argues that it is an arm of the state of Michigan entitled to Eleventh Amendment immunity which therefore bars Plaintiff's

suit.  (Br. in Supp. of Univ. of Mich.'s Mot. to Dismiss [Doc.
No. 29-1] (hereinafter, "Regents' Br.") 6-7.)  Moreover, the
Board of Regents argues both that the Court lacks personal
jurisdiction over the University of Michigan and that Plaintiff
lacks standing to sue the University in this case.  (Id. at 7-
10.)  Finally, the Board of Regents contends that none of the
counts of Plaintiff's complaint state a claim upon which relief
can be granted, and therefore they must be dismissed pursuant to
Federal Rule of Civil Procedure 12(b)(6).  (Id. at 10-16.)

The Eleventh Amendment provides that "[t]he Judicial power
of the United States shall not be construed to extend to any
suit in law or equity, commenced or prosecuted against one of
the United States by Citizens of another State, or by Citizens
or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.
Accordingly, the Supreme Court has made clear for over a century
"that the Constitution does not provide for federal jurisdiction
over suits against nonconsenting States."  Kimel v. Florida Bd.
of Regents, 528 U.S. 62, 73 (2000).[7]

_____

[7]    The Third Circuit has recognized that because "the Eleventh
Amendment is a jurisdictional bar which deprives federal courts
of subject matter jurisdiction[,]" a motion to dismiss based on
Eleventh Amendment immunity is properly considered under Federal
Rule of Civil Procedure 12(b)(1).  Blanciak v. Allegheny Ludlum
Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing Pennhurst
State School & Hosp. v. Halderman, 465 U.S. 89, 98–100 (1984)).

16

Unless Eleventh Amendment immunity has been waived by the
state or abrogated by a federal statute, private parties who
seek to impose liability which must be paid from public funds in
the state treasury are barred by the Eleventh Amendment from
bringing suit in federal court.  Quren v. Jordan, 440 U.S. 332,
337 (1979); see also Pa. Fed'n of Sportsmen's Clubs, Inc. v.
Hess, 297 F.3d 310, 323 (3d Cir. 2002) ("the Eleventh Amendment
... has been interpreted to render states -- and, by extension,
state agencies and departments and officials when the state is
the real party in interest -- generally immune from suits by
private parties in federal court.").

Here, the Board of Regents of the University of Michigan
argues that it is an arm of the State of Michigan and as such it
is entitled to Eleventh Amendment immunity from suit in federal
court.  (Regents' Br. 6.)  The Board of Regents further asserts
none of the very limited exceptions[8] to Eleventh Amendment
immunity apply in this case because: (1) the Board of Regents
has not consented to suit; (2) none of Plaintiff's claims are
premised upon a statute which abrogates the Board of Regents'

---

[8]     "Eleventh Amendment immunity is subject to three
exceptions: 1) congressional abrogation, 2) state waiver, and 3)
suits against individual state officers for prospective relief
to end an ongoing violation of federal law."  MCI
Telecommunication Corp. v. Bell Atlantic Pennsylvania, 271 F.3d
491, 503 (3d Cir. 2001).

immunity; and (3) Plaintiff is not seeking to enjoin a state official from engaging in future conduct.

The Third Circuit has acknowledged that "[t]he majority of cases addressing the question of Eleventh Amendment immunity for public colleges and universities have found such institutions to be arms of their respective states and thus immune from suit." Kovats v. Rutgers, The State University, 822 F.2d 1303, 1312 (3d Cir. 1987); see also U.S. ex rel Diop v. Wayne Cnty. Cmty. College Dist., 242 F. Supp. 2d 497, 526 (E.D. Mich. 2003) (observing that "[s]tate universities and colleges almost always enjoy Eleventh Amendment immunity.") In this case, the Court agrees with the Board of Regents that – as the body corporate for the University of Michigan - it is entitled to Eleventh Amendment immunity with respect to the claims alleged in Plaintiff's Amended Complaint because the Board of Regents (and therefore the University of Michigan itself) is an arm of the state.[9]

---

[9] To determine whether a particular entity, such as a university, should be considered a state instrumentality and thus be entitled to share in the state's Eleventh Amendment immunity the Third Circuit utilizes a nine factor inquiry which requires the Court to examine the following:

> [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the

As the Board of Regents points out, the Court of Appeals
for the Sixth Circuit has consistently found that the Board of
Regents, and thus the University of Michigan, is an arm of the
state of Michigan entitled to Eleventh Amendment immunity for
claims brought in against it in federal court.  See, e.g., Ali
v. University of Michigan Health System-Risk Management, 523 F.
App'x 319, 320 (6th Cir. 2013) (recognizing that "[t]he Board of

---

other factors, no one of which is conclusive, perhaps
the most important is whether, in the event plaintiff
prevails, the payment of the judgment will have to be
made out of the state treasury; significant here also
is whether the agency has the funds or the power to
satisfy the judgment. Other relevant factors are
whether the agency is performing a governmental or
proprietary function; whether it has been separately
incorporated; the degree of autonomy over its
operations; whether it has the power to sue and be
sued and to enter into contracts; whether its
property is immune from state taxation, and whether
the sovereign has immunized itself from
responsibility for the agency's operations.

Kovats v. Rutgers, The State University, 822 F.2d 1303, 1307 (3d
Cir. 1987) (citations omitted).
    With respect to the University of Michigan, the Sixth
Circuit examined several of these same factors in Ritter.  851
F.2d at 848-851.  The Sixth Circuit has recognized that any
judgment against the Board of Regents would be paid out of the
Michigan state treasury, that the University is a department of
state government created by the state constitution to carry out
state functions, and that its property is held in trust as
public property of the state of Michigan.  Id.  Accordingly, the
Sixth Circuit determined that the Board of Regents and the
University are an arm of the state entitled to Eleventh
Amendment Immunity.

Regents, as a state instrumentality, is entitled to Eleventh

Amendment immunity from ... [state law] claims [seeking damages

for medical malpractice and defamation] brought in federal court

and has not waived that immunity, having raised it as a defense

in its motion to dismiss."); Dillon-Barber v. Regents of

University of Michigan, 51 F. App'x 946, 949 (6th Cir. 2002)

(acknowledging that plaintiff's ADA claims against the

University for money damages must be dismissed because the

University enjoys Eleventh Amendment immunity from such claims

in federal court); Estate of Ritter by Ritter v. Univ. of

Michigan, 851 F.2d 846, 848 (6th Cir. 1988) (concluding, after

examination of the relevant state law as to the relationship

between the Board of Regents and the state of Michigan, that the

Board of Regents is an arm of the state to which Eleventh

Amendment immunity applies); Karmanos v. Baker, 816 F.2d 258,

259 n.2 (6th Cir. 1987) ("The U[niversity] of M[ichigan]

defendants are immune from suit for damages in their official

capacities under the Eleventh Amendment.").[10]

_____

[10]   Several federal district courts in Michigan have reached
the same conclusion.  See, e.g., Ali v. University of Michigan
Health System-Risk Management, No. 11-13913, 2012 WL 3112419, at
*3-4 (E.D. Mich. May 4, 2012), aff'd, 523 F. App'x 319 (6th Cir.
2013) (finding that the Board of Regents was entitled to
Eleventh Amendment immunity on plaintiff's claims for money
damages); Ewing v. Board of Regents of the University of
Michigan, 552 F. Supp. 881, 883 (E.D. Mich. 1982) (concluding

Plaintiff opposes the Board of Regents' motion arguing that "because the actions of the Regents violated ... Polanco's and the Class' constitutionally protected right to privacy, sovereign immunity does not apply" here. (Pl.'s Omnibus Response in Opp'n to the Pending Mots. To Dismiss [Doc. No. 40] (hereinafter, "Pl.'s Opp'n") 43.)  Although Plaintiff concedes that the first and third exceptions to Eleventh Amendment immunity set forth supra are not applicable here, (see id. at 44, n.22), Plaintiff contends that the second exception, "which allows Congress to abrogate states' sovereign immunity applies [to this case] because a state's immunity will be abrogated when it has violated the United States Constitution." (Id. at 44.)

According to Plaintiff, "if Congress can limit the sovereign immunity of states by statute, then a state's sovereign immunity must be abrogated when [a state] violates the United States Constitution." (Id.)  Relying on this unsupported proposition, Plaintiff asserts that the Board of Regents is not entitled to Eleventh Amendment in this case because it allegedly

---

that the University of Michigan is "a state instrumentality entitled to Eleventh Amendment immunity."); cf. Platt v. University of Mich., No. 2:09-CV-10886, 2010 WL 1286487, at *10-11 (E.D. Mich. Mar. 3, 2010) (observing that while not applicable to plaintiff's claims under Title VII, "[o]rdinarily, ... claims against defendant University of Michigan, an arm of the state, would be barred by the Eleventh Amendment").

violated her constitutional right of privacy, and that of the
Class, when the Board of Regents allowed her PCI "to be
maintained in an unsecure manner, then stored on an unsecure
laptop without any encryption or other protection." (Id. at
47.)

This argument is a red herring.  Initially, a fair reading
of Plaintiff's Amended Complaint demonstrates that it does not
assert, in any manner, a Constitutional claim that any of the
Defendants violated Plaintiff's Constitutional right of privacy,
or those of the putative class.  The Amended Complaint is
completely devoid of any factual allegations that could be
construed to allege such a claim, and it expressly limits
Plaintiff's purported claims to those arising under state law
for breaches of state security notification laws, violations of
consumer fraud laws, fraud, negligence, and conspiracy. (See
generally Am. Compl. ¶¶ 78-116.)

Moreover, to the extent that the Amended Complaint alleges
such a Constitutional claim, the proper vehicle to bring a claim
for the purported violation of one's right to privacy, if at
all, would be 42 U.S.C. § 1983.  However, even if the Court were
to construe Plaintiff's Amended Complaint to assert a Section
1983 claim, the Board of Regents would still be entitled to
Eleventh Amendment immunity here.  Section 1983 provides a civil

22

remedy for the deprivation of rights established by the
Constitution or federal law.  Kaucher v. County of Bucks, 455
F.3d 418, 423 (3d Cir. 2006).  While Section 1983 allows for a
federal forum to remedy many such claims, it does not create a
forum for litigants who seek a remedy against a State for
alleged deprivations of their civil rights.  Will v. Michigan
Dept. of State Police, 491 U.S. 58, 66 (1989).  The Supreme
Court has previously found that Congress did not intend to
rescind the States' Eleventh Amendment immunity in enacting
Section 1983. See Quern v. Jordan, 440 U.S. 332, 345, 99 S. Ct.
1139, 59 L.Ed.2d 358 (1979); see also Will, 491 U.S. at 66
("That Congress, in passing § 1983, had no intention to disturb
the States' Eleventh Amendment immunity and so to alter the
federal-state balance in that respect was made clear in our
decision in Quern." ).  Therefore, even if Plaintiff's Amended
Complaint alleged a Constitutional deprivation actionable under
Section 1983, the Board of Regents' Eleventh Amendment immunity
would remain unaffected here.

 Having concluded that the Board of Regents is entitled to
Eleventh Amendment immunity here,[11] the Court will dismiss all of

---

[11]   Having dismissed all claims against the Board of Regents on
the basis of Eleventh Amendment immunity, the Court need not
address the Board of Regents alternative arguments regarding
personal jurisdiction, Plaintiff's standing, or whether

Plaintiff's claims against the Board of Regents without prejudice for lack of jurisdiction.[12]

### B.  Sentara's Motion to Dismiss

Sentara makes three main arguments in support of its motion to dismiss Plaintiff's Amended Complaint in its entirety as brought against Sentara.  Initially, pursuant to Rule 12(b)(1), Sentara challenges the Court's subject matter jurisdiction to hear Plaintiff's claims asserting that Plaintiff does not have Article III standing because she has not suffered an injury that is traceable to conduct on the part of Sentara.  (Mem. of Law in Supp. of Sentara's Mot. to Dismiss [Doc. No. 28-1] (hereinafter, "Sentara's Mem."), 1-2.)  Sentara further argues, pursuant to Rule 12(b)(2), that the Court lacks personal jurisdiction over Sentara, a Virginia-based hospital, which has no meaningful contacts with New Jersey.  (Id. at 3.)  Finally, Sentara challenges the sufficiency of Plaintiff's Amended Complaint

_____

Plaintiff has sufficiently stated a claim upon which relief can be granted.

[12]    A "District Court's dismissal for lack of subject matter jurisdiction [is] by definition without prejudice."  New Jersey Physicians, Inc. v. President of U.S., 653 F.3d 234, 241 n.8 (3d Cir. 2011) (citing Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 182 (3d Cir. 1999) (recognizing that "a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice.'").

pursuant to Rule 12(b)(6) for failure to state a claim upon
which relief can be granted.  (Id. at 2-3.)

   Because Plaintiff's standing to bring a claim against
Sentara is a threshold jurisdictional requirement, see Pub.
Interest Research Grp., 123 F.3d at 117, the Court considers
this argument at the outset.  As set forth supra, there are
three elements a plaintiff must establish in order to have
Constitutional standing under Article III.  "First, the
plaintiff must suffer an injury-in-fact that is concrete and
particularized and actual or imminent, as opposed to conjectural
or hypothetical.  Second, there must be a causal connection
between the injury and the conduct complained of — the injury
has to be 'fairly ... trace[able] to the challenged action of
the defendant, and not ... th[e] result [of] the independent
action of some third party not before the court.' ...  Third, it
must be likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision."  Edmonson v.
Lincoln Nat. Life Ins. Co., 725 F.3d 406, 415 (3d Cir. 2013)
(citations and internal quotations omitted).

   Here, Sentara challenges the first two elements: whether
Plaintiff suffered an injury-in-fact, and whether there is a
causal connection between the alleged injury and Sentara's
conduct.  Even assuming that Plaintiff were able to satisfy the

25

first element of standing regarding her alleged injury,[13] the
Court finds that Plaintiff still lacks standing to bring claims
against Sentara here because the facts alleged in the Amended
Complaint fail to demonstrate any causal connection between the
alleged injury and any conduct on the part of Sentara.  Thus,
Plaintiff's claims against Sentara must be dismissed for lack of
subject matter jurisdiction.

As the Third Circuit has explained, "[t]he second
requirement of Article III standing, causation, requires that
'the alleged injury-in-fact is causally connected and traceable
to an action of the defendant[].'"  Edmonson, 725 F.3d at 418
(citing The Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir.
2000); Lujan, 504 U.S. at 560).  The causation requirement of
standing is "akin to 'but for' causation and ... the
traceability requirement [can be] met even where the conduct in
question might not have been a proximate cause of the harm, due
to intervening events."  Edmonson, 725 F.3d at 418.

The fact "[t]hat a suit may be a class action ... adds
nothing to the question of standing, for even named plaintiffs
who represent a class 'must allege and show that they personally

---

[13]    The Court addresses the sufficiency of Plaintiff's alleged
injury infra in response to similar arguments made by Sentara,
Inspira, and Omnicell.

have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Lewis v. Casey, 518 U.S. 343, 356 (1996) (citations omitted).  Moreover, "plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant[,]" "[w]hether for reasons of lack of standing ... or for lack of Rule 23(a)(3) typicality[.]"  See Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083, 1086 n.18 (3d Cir. 1975) (citations omitted).

Sentara argues that Plaintiff cannot meet this standard because she has not alleged any relationship with Sentara. (Sentara's Mem. 7.)  Sentara points out that the Amended Complaint alleges only that Plaintiff had a relationship with SJHA (and therefore, Inspira), but that Sentara is not related to either of these Defendants.  (Id.)  Moreover, Sentara contends that because Plaintiff fails to allege that she provided any of her PCI or her protected health information ("PHI") to Sentara she cannot allege an injury traceable to Sentara, which is essentially a legal stranger to Plaintiff. (Id.)

A thorough review of the Amended Complaint makes clear that Plaintiff has failed to allege any specific conduct by Sentara

that is "fairly traceable" to her alleged injury.  The conduct
of which Plaintiff primarily complains is the unsecured storage
and subsequent loss of her PCI and PHI.  This information was
provided by Plaintiff directly to SJHS (and thus Inspira) during
the course of obtaining medical treatment for her daughter.  The
information was then transmitted to Omnicell, and ultimately,
while that information was in Omnicell's possession, there was a
data breach when a third-party stole the Omnicell laptop.

As alleged, the Amended Complaint demonstrates that Sentara
was not involved in any way in this specific chain of events.
Neither Plaintiff, nor her daughter, were ever patients of any
Sentara hospital.  Sentara never possessed Plaintiff's
information in the first instance, and therefore could not have
transmitted her Omnicell from which it was later compromised.
The fact that similar information belonging to Sentara patients
was allegedly on the same laptop is not sufficient to confer
standing on Plaintiff with respect to Sentara's conduct.[14]  The
Amended Complaint simply fails to allege any direct contact
between Plaintiff and Sentara that could have resulted in any
purported injury to Plaintiff by Sentara's conduct.  The Court

---

[14]    Plaintiff is required to establish standing with respect to
each separate Defendant named in this suit, and she cannot rely
on conduct by Sentara that relates to unidentified, potential
class members.  See Haas, 526 F.2d at 1096 n.18.

notes that Plaintiff's opposition does not address this specific argument by Sentara in any meaningful way, and it appears to the Court that Plaintiff concedes the lack of any relationship between her and Sentara.

In short, the Amended Complaint does not allege that Plaintiff provided her PCI or PHI to Sentara, or that Sentara, specifically, was in anyway involved in the loss of her information.  In the absence of any direct contact between Plaintiff and Sentara, Plaintiff cannot show an injury that is traceable to Sentara's conduct, and as a result Plaintiff lacks standing to sue Sentara.  See Buetow v. A.L.S. Enterprises, Inc., 564 F. Supp. 2d 1038, 1044-1046 (dismissing counts I-III of plaintiffs amended class action complaint as to defendants Bass Pro and Browning for lack of standing after finding that the complaint did not allege any direct contact between the named plaintiffs and these defendants and thus could not show an injury traceable to their conduct).  In light of the Court's finding that Plaintiff lacks standing to sue Sentara, the Court need not address Sentara's remaining arguments as to the Court's lack of personal jurisdiction and Plaintiff's failure to state a claim for which relief can be granted.

**C.  Defendants' Arguments Regarding Plaintiff's Injury**

Defendants Sentara, Inspira, and Omnicell each argue in

29

their respective motions [Doc. Nos. 28, 30, 31] that Plaintiff's
Amended Complaint should be dismissed for lack of subject matter
jurisdiction because Plaintiff fails to adequately allege an
injury-in-fact and thus lacks standing to bring her claims.
(Sentara's Mem. 11-14; Mem. of Law in Supp. of Mot. to Dismiss
by SJHS and Inspira [Doc. No. 30-1] (hereinafter, "Inspira's
Mem."), 4-11; Mem. of Law in Supp. of Def.'s Omnicell's Mot. to
Dismiss Pl.'s First Am. Class Action Compl. [Doc. No. 31-1]
(hereinafter, "Omnicell Mem."), 4.)[15]  Defendants contend that
the only injury allege in the Amended Complaint consists of
Plaintiff's "self-imposed 'increased costs' based on pure
speculation" whereby Plaintiff sought treatment for her daughter
at a different hospital, farther away, at an increased cost
because she did not receive reassurance from Defendants that her
PCI and PHI would be adequately secured from subsequent losses.
(Sentara's Mem. 13; see also Inspira's Mem. 11) ("The only loss
Polanco alleges, however, is for her travel costs to avoid
potential future disclosure of her confidential information.").

---

[15]    Omnicell's memorandum of law in support of its motion
purports to "join in and incorporate[] by reference the standing
arguments raised in" Sentara's memorandum and Inspira's
memorandum.  (Omnicell's Mem. 4.)  Accordingly, the Court
provides no further citation to Omnicell's memorandum on the
issue of standing and relies on the arguments proffered by
Sentara and Inspira in this deciding this issue.

Defendants assert that Plaintiff's purported injury comprises the "sort of speculative and manufactured damages prohibited" under Supreme Court and Third Circuit precedent. (Sentara's Mem. 14.)

According to Defendants, "[a]t most, Polanco fears that, if she continued to take her daughter to [Inspira] hospitals, her or her daughter's confidential information may be accessed by a thief who may steal [an Inspira] contractor's laptop that may have her or her daughter's confidential information on it that may be unencrypted." (Inspira's Mem. 5.) Defendants assert, "[b]ecause the damages that Polanco alleges were voluntarily incurred to avoid a speculative injury, she has failed to show standing for any of her common law claims." (Id. at 10.) Defendants specifically point to Plaintiff's failure to allege that her PCI or PHI was actually read, reviewed, understood and misused for criminal purposes by the unknown third party who stole the laptop in question.

In support of their arguments that Plaintiff's Amended Complaint should be dismissed for lack of standing because she has not alleged a sufficient injury-in-fact, Defendants rely primarily on the Supreme Court's opinion in Clapper v. Amnesty International USA, 133 S. Ct. 1138 (2013) and the Third Circuit's opinion in Reilly v. Ceridian Corporation, 664 F.3d 38

31

(3d Cir. 2011).  As Defendants point out, in Clapper, the
Supreme Court analyzed Article III standing, noting it has
"repeatedly reiterated that 'threatened injury must be certainly
impending to constitute injury in fact,' and that '[a]llegations
of possible future injury' are not sufficient."  133 S. Ct. at
1147 (citations omitted).  The Third Circuit similarly
articulated in Reilly that "[a]llegations of 'possible future
injury' are not sufficient to satisfy Article III."  664 F.3d at
42.  The Court's review of Reilly and Clapper indicates that
these two cases are controlling for purposes of evaluating
Plaintiff's standing in the present action.[16]

    Reilly is a data security breach case.  Id. at 43.  In
Reilly, the defendant Ceridan Corporation was "a payroll
processing firm" which collected "information about its
customers' employees" including their names, addresses, social
security numbers, dates of birth, and bank account information"
in order to process the payrolls of its business customers.  Id.
at 40.  In December of 2009, Ceridan suffered a security breach
when an unidentified hacker infiltrated Ceridian's systems and
potentially gained access to personal and financial information

---

[16]    As set forth infra, the Court is not persuaded by
Plaintiff's attempt to argue that her case is not a data
security breach case and is thus different from the cases
Defendants rely on to argue her lack of an injury.

of the plaintiffs and 27,000 other employees at 1,900 different businesses.  Id.  It was unknown to the parties "whether the hacker read, copied, or understood the data."  Id.  The plaintiffs brought a class action suit alleging that they: "(1) ha[d] an increased risk of identity theft, (2) incurred costs to monitor their credit activity, and (3) suffered from emotional distress."  Id.

Ceridan moved to dismiss under Rules 12(b)(1) and 12(b)(6) for lack of standing and failure to state claim.  Id. at 41. The district court granted Ceridan's motion holding that the plaintiffs lacked Article III standing, and finding in the alternative that even if the plaintiffs had standing, they failed to adequately allege the damage, injury, and ascertainable loss elements of their claims.  Id.  On appeal, the Third Circuit affirmed the district court's ruling that the plaintiffs lacked standing and thus did not reach the merits of the plaintiffs' claims.  Id. at 40-41.

The Third Circuit recognized that the plaintiffs' contentions relied on "speculation that the hacker: (1) read, copied, and understood their personal information; (2) intend[ed] to commit future criminal acts by misusing the information; and (3) [was] able to use such information to the detriment of [the plaintiffs] by making unauthorized

transactions in [their] names." Id. at 42.  The Third Circuit
concluded that these "allegations of hypothetical, future injury
[were] insufficient to establish standing" because the
plaintiffs had "not yet suffered any injury" and would not
suffer an injury "[u]nless and until [their] conjectures [came]
true[.]"  Id.  The Third Circuit summed it up as follows: "there
has been no misuse of the information, and thus, no harm."  Id.

     The Circuit Court went on to note that "[i]n this
increasingly digitized world, a number of courts have had
occasion to decide whether the 'risk of future harm' posed by
data security breaches confers standing on persons whose
information *may* have been accessed[,]" but that "[m]ost courts
[to consider the issue] have held that such plaintiffs lack
standing because the harm is too speculative."  Id. at 43
(emphasis in original) (citations omitted).  The Third Circuit
explicitly "agree[d] with the holdings in those cases."  Id.
Thus, where there is an absence of evidence suggesting that "the
data ha[d] been — or w[ould] ever be — misused" the plaintiffs'
allegations of an increased risk of identity theft resulting
from a security breach were insufficient to establish standing.
Id.

     In her opposition, Plaintiff essentially concedes that she
has not alleged either: (1) any misuse of her PCI or PHI; or (2)

34

that she is now at an increased risk for the misuse of her information in the future based on the theft of the laptop. (Pl.'s Opp'n 21.)  She also expressly denies that she has any "'fear' [of] what the thief who allegedly stole the Omnicell laptop might do with her PHI and PCI[.]"  (Id.)  Instead, Plaintiff summarizes that her "claims involve the actual loss of personal property, the failure to secure such property going forward, and monies lost due to Inspira's failure to fulfill its express promises made to Plaintiff."  (Id. at 27.)

    Plaintiff attempts to argue that her "claim is different" than the data breach security cases cited and relied upon by Defendants.  (Id.)  Plaintiff asserts that unlike those cases, the Amended Complaint alleges "the actual loss of her PHI and PCI" which "revealed to [Plaintiff] the fact that Inspira is not HIPAA-complaint in handling her PHI and PCI."  (Id.)  Plaintiff asserts that because of Inspira's "refusal to acknowledge its failings, and to take steps to remedy such failings, she has sued to prevent any further dissemination of her PHI and PCI by Inspira, and to force Inspira and Omnicell to purge their files of her sensitive information (or to secure it going forward)."[17]

---

[17]  Plaintiff concedes that she has not suffered an injury with respect to the misuse of her information, and the portion of Plaintiff opposition highlighted here demonstrates rather clearly that Plaintiff is seeking to prevent future harm, i.e.,

35

(Id.)

Plaintiff's arguments seeking to distinguish her case from the data breach security cases cited by Defendants based on the allege "loss" of her PCI and PHI are unpersuasive here.[18]  At the outset, Plaintiff's Amended Complaint makes only limited references to the purported "loss" of her information.[19] Moreover, to the extent Plaintiff alleges that the injury she suffered here is the "loss" (or presumably, disclosure) of her

---

"further dissemination" of her information and to secure her information "going forward."

[18]  Plaintiff opposition also asserts similar allegations that her information was "stored in an unsecured manner in contravention of HIPPA."  (Pl.'s Opp'n 26.)

[19]  (See, e.g., Am. Compl. ¶ 46) (asserting that Omnicell's December 31, 2012 notice letter "failed to advise Plaintiff and the Class about the material information concerning the loss of their PCI such as how and why an Omnicell employee came to have in his possession, outside a medical facility, an Omnicell laptop computer containing PCI of Plaintiff and the Class; how and why the PCI was unencrypted, in violation of the Health Insurance Portability and Accountability Act of 1996; and what concrete steps were being taken by all Defendants to secure existing PCI to ensure that the PCI of Plaintiff and the Class was not compromised in the future."); (Id. ¶ 49) (alleging that "because she has received no reassurance from the Defendants that they are taking the necessary steps to ensure that her PCI is safe from subsequent loss by the Defendants and unauthorized access, Plaintiff has opted to seek treatment for her daughter from hospitals that are not a part of SJHS [Inspira]. For example, on January 23, 2013, as a direct result of the loss of her PCI by SJHS [Inspira], Mrs. Polanco took her daughter to The Memorial Hospital of Salem County in Salem, New Jersey, as opposed to" the Inspira hospital located by her home.)

information in violation of HIPAA and Defendants' failure to
secure her information going forward as required by HIPAA, the
Court notes that HIPAA does not provide a private right of
action to remedy HIPAA violations.  See Mebuin v. United States,
Nos. 12-7220, 13-0446, 2013 WL 5411145, at *9 (D.N.J. Sept. 25,
2013) (observing that "[a]lthough the Court of Appeals for the
Third Circuit has not addressed the question, every other
federal Circuit Court to consider the matter has found that
HIPAA provides neither an express nor an implied private right
of action to an aggrieved patient" with regard to the disclosure
of confidential medical information) (citing cases).[20]

The ability to bring an enforcement action to remedy HIPAA
violations, and ensure that a healthcare provider is HIPAA

---

[20]   The district court in Mebuin cited the following cases from
the federal Circuit Courts of Appeals and other district courts
within the District of New Jersey in support of the proposition
that HIPAA does not provide a plaintiff with a private right of
action.  See, e.g., Carpenter v. Phillips, 419 F. App'x 658, 659
(7th Cir. 2011); Dodd v. Jones, 623 F.3d 563, 569 (8th Cir.
2010); Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir.
2010); Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009); Webb
v. Smart Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir.
2007); Sweeney v. Department of Homeland Security, 248 F. App'x
179, 181 (Fed. Cir. 2007); Acara v. Banks, 470 F.3d 569, 571
(5th Cir. 2006); Carter v. Buttonwood Hosp., No. 12-6504, 2013
WL 211108, at *5 (D.N.J. Jan. 17, 2013); Hove v. Cleary, No. 10-
1876, 2011 WL 2223760, *6-7 (D.N.J. June 6, 2011); L.S. v. Mount
Olive Bd. of Educ., 765 F. Supp. 2d 648, 664 (D.N.J. 2011);
Merling v. Horizon Blue Cross Blue Shield of New Jersey, No. 04-
4026, 2009 WL 2382319, at *4 n.1 (D.N.J. July 31, 2009).

complaint, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens. Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006) ("HIPAA limits enforcement of the statute to the Secretary of Health and Human Services.") Accordingly, to the extent Plaintiff contends that her injury – for purposes of conferring standing – is the alleged loss of her information in violation of HIPAA and the failure to secure such information going forward, the Court rejects that argument. Because Plaintiff cannot assert a private right of action with respect to any alleged violations of HIPAA by Defendants, Plaintiff cannot claim any deprivation, and consequently, cannot establish a "concrete and particularized" injury sufficient to confer standing here related to the "loss" of her PCI and PHI.

More importantly though, Plaintiff's assertions in the Amended Complaint and in her opposition that her PCI and PHI were "lost" are directly contradicted by the December 31, 2012 letter from Omnicell, attached as Exhibit A to the Amended Complaint. (Ex. A to Pl.'s Am. Compl. [Doc. No. 12-1], 1-2.) In that letter, Omnicell explicitly confirms that "[t]he patient's medical records were not on the device [i.e., the laptop], and that the patient's medical information has not been *lost*." (Id. at 2) (emphasis added). Omnicell's letter goes on to state that

there is "no reason to believe that the device was taken for the
information it contained, or that the information has been
accessed or used improperly." (Id.) Thus, to the extent
Plaintiff claims that the injury she suffered was the "loss" of
her information, her allegations of "loss" are belied by the
representations made in the December 31, 2012 letter.

In general, the Amended Complaint sets forth only broad and
conclusory allegations of harm that fail to satisfy Plaintiff's
burden to demonstrate that she suffered an invasion of a legally
protected interest which is both "concrete and particularized" –
meaning she was injured in a personal and individual way – and
"actual or imminent" as opposed to conjectural and hypothetical.
(See, e.g., Am. Compl. ¶ 6 (asserting that Plaintiff's suit "
seeks to remedy the harmful effects" related to the "loss" of
her PCI without specifying any such "harm"); id. ¶ 13 (alleging
that "Plaintiff suffered direct injury and damages as a result
of the data breach and compromise of her PCI" without describing
the nature of this "direct injury"); id. ¶ 74 (contending that
"Plaintiff and members of the Class have all suffered, and will
continue to suffer, harm and damages as a result of the
Defendant' unlawful and wrongful conduct" without any factual
support)).

In her opposition, Plaintiff seemingly relies on

39

Defendants' purported breaches of various statues in support of her argument that she has suffered an injury-in-fact. (See Pl.'s Opp'n 21-23 (alleging a variety of violations of state and federal statutes with respect to security of data and notification requirements when data is compromised)). However, merely asserting violations of certain statutes is not sufficient to demonstrate an injury-in-fact for purposes of establishing standing under Article III, and the Court rejects Plaintiff's assertions on this point.  See Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 153 (3d Cir. 1999) (observing that it is "incorrect" to "equate[] a violation of a statute with an injury sufficient to confer standing" and explaining that "[t]he proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.").

Arguably, the only harm that Plaintiff alleges in the Amended Complaint is that she incurred unspecified increased out-of-pocket expenses in seeking treatment for her daughter at medical facilities other than Defendants' because she was "unwilling to return to" SJHS and Inspira "until such time as per PCI is secure, her rights under [HIPAA] are protected, and the deficiencies that led to the November 14 [sic] incident have been corrected to her satisfaction."  (Am. Compl. ¶ 12; see also

40

id. ¶¶ 49-50; Pl.'s Opp'n 13 (asserting that Plaintiff "suffered further losses of money in taking prudent steps to respond to Inspira's disclosure of its HIPAA violations and refusal to comply with HIPAA going forward" by "prudently ... [choosing] to not go to a hospital that is not HIPAA-complaint for emergency care" and instead "reasonably [seeking] treatment for her daughter at HIPAA-complaint hospitals, albeit at great expense of time and money[.]")).

Important for purposes of the present motion, the Third Circuit expressly determined in Reilly that the "alleged time and money expenditures [of the plaintiffs] to monitor their financial information [did] not establish standing ... because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the allege 'increased risk of injury' which form[ed] the basis for" the plaintiffs' claims.  664 F.3d at 46. "That a plaintiff has willingly incurred costs to protect against an alleged increased risk of identity theft is not enough to demonstrate a 'concrete and particularized' or 'actual or imminent' injury."   Id.

Here, while Plaintiff has incurred these expenses in seeking treatment for her daughter at what she terms "HIPAA-complaint" hospitals, rather than at Defendants' medical

41

facilities, she has not done so as a result of any actual injury such as the misuse of her PCI or PHI, or medical insurance fraud of some kind by a third-party.  Much like the Plaintiffs in Reilly, Plaintiff has "prophylactically spent money to ease [her] fears of [a] future" "loss" of her PCI and PHI by a "HIPAA-noncompliant"[21] medical facility and therefore made an independent decision to seek treatment elsewhere.  See 664 F.3d at 46.  Plaintiff's decision to do so was based entirely on her speculative belief that her PCI or PHI would be "lost" again by Defendants.[22]  Therefore, her assertion is one that claims injury

---

[21]  Nothing in this Opinion should be construed as a finding by the Court with regard to any of Defendants' compliance, or lack thereof, with HIPAA.  That issue is not before the Court on this motion, and the Court makes no findings in that regard.

[22]  To the extent Plaintiff argues that seeking treatment elsewhere was not a choice, was not voluntary on her part, and was not based speculation about the security of her information, these arguments are disingenuous.  Plaintiff essentially claims that she had no choice because she was not reassured that her information would be secure if she sought treatment for her daughter at Defendants' facilities.

However, Omnicell's December 31, 2012 letter clearly indicates that "Omnicell is taking steps to improve its security program and practices in response to this incident.  We have assured South Jersey Hospital that we have taken steps, including technology changes and re-education of our employees, to assure that no patient information is stored on unsecured electronic devices in the future."  (Ex. A to Pl.'s Am. Compl. [Doc. No. 12-1], 2.)  Omnicell further provided Plaintiff with a number to call to obtain more information or to answer any questions Plaintiff might have had about the future security of her information.  (Id.)

As Defendants point out, the Amended Complaint makes no

for expenses incurred in anticipation of future harm, and is not sufficient for purposes of establishing Article III standing. See Reilly, 664 F.3d at 46; see also Clapper, 133 S. Ct. at 1151 (rejecting plaintiffs' contention "that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm" where district court found standing based on travel expenses incurred to avoid such a future risk).[23]

    Despite her attempts to argue otherwise,[24] for the reasons

---

allegations that Plaintiff sought any reassurance or clarification regarding these steps as instructed by the letter before seeking treatment for her daughter elsewhere.  Thus, it not accurate for Plaintiff to argue that she had no choice and was not acting on the basis of her on speculated beliefs. Allegations that Plaintiff inquired further into the security of her information, learned that it was not secure, and acted as a result might not be considered speculative.  Here, however, there are no such allegations in the Amended Complaint.

[23]    This finding by the Court should not be interpreted as a comment on the reasonableness of Plaintiff's actions in seeking necessary medical treatment for her sick child.  The reasonableness of her actions in that regard is not at issue here.  What is at issue is whether those actions constitute the type of injury contemplated by Article III for purposes of standing.  Based on the pronouncements of the Supreme Court in Clapper and the Third Circuit in Reilly, this Court concludes that it does not.

[24]    Plaintiff attempts to rely on the New Jersey Consumer Fraud Act ("CFA") to argue that Defendants' alleged HIPAA violations with respect to the "loss" of her information constitute an unconscionable commercial practice in violation of the CFA. Plaintiff cites no case law in support of that proposition, and the Court's research reveals no case where any state or federal court in New Jersey interpreted the CFA to serve as a backdoor remedy for HIPAA violations.

set forth above, it is clear that Plaintiff has not alleged an injury sufficient to confer standing here, and accordingly her Amended Complaint must be dismissed without prejudice[25] in its entirety.  Having dismissed the Amended Complaint for lack of standing, the Court need not address Defendants' further arguments regarding the sufficiency of Plaintiff's Amended Complaint under Rule 12(b)(6).

**V.    CONCLUSION**

For the reasons set forth herein, Defendants' motions [Doc. Nos. 28, 29, 30, 31] are granted.  An Order consistent with this Opinion will be entered.

Date: December 26, 2013                     s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[25]    While Defendants seek the dismissal of Plaintiff's Amended Complaint with prejudice, the Court is dismissing for lack of standing under Rule 12(b)(1), and therefore the dismissal must be without prejudice since it is one for lack of subject matter jurisdiction.  See New Jersey Physicians, Inc., 653 F.3d at 241 n.8.